**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD MILLER, on behalf of** | : | **CIVIL NO. 3:12-CV-1715** |
| **himself and all others similarly** | : | |
| **situated** | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TRANS UNION, LLC.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction, Procedural History and Statement of Facts

This case, which comes before us on a motion to dismiss, presents novel

questions regarding the reach of the Fair Credit Reporting Act (FCRA), 15 U.S.C.

§1681.   These questions involve the completeness and accuracy of Trans Union

disclosures and reports relating to whether a consumer's identity may potentially

match names contained on a list maintained by the United States Treasury

Department's Office of Foreign Assets Control, ("OFAC"), a list of entities and

individuals identified as hostile to the United States.[1]   These legal issues, in turn, are

---

[1]As the United States Court of Appeals for the Third Circuit has previously
explained: "OFAC administers and enforces economic and trade sanctions based
on U.S. foreign policy and national security goals against threats to the national
security, foreign policy, or economy of the United States. Those sanctions are

framed for the Court against a legal backdrop which acknowledges that a negligent and erroneous report by a credit reporting service of a potential connection between a consumer and persons on the OFAC list may state a claim under FCRA. See Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010).

Cast against this background, we are now asked a different question: Does a potentially ambiguous report or file which denies, albeit in an obscure manner, a connection between a consumer and persons on the OFAC list also state a cause of action under FCRA? We are called upon to address this question because the instant case comes to us in an unusual factual context where all parties seem to agree that the plaintiff, Mr. Miller is not on any OFAC list, and where the defendant, Trans Union,

---

aimed at specific regimes, individuals thought to be terrorists, international narcotics traffickers, as well as persons involved in activities related to the proliferation of 'weapons of mass destruction.' http://www.treas.gov/offices/enforcement/ofac/ (visited on June 17, 2010). . . . . '[a]s part of its enforcement efforts, OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries. It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific. Collectively, such individuals and companies are called "Specially Designated Nationals" or "SDNs." Their assets are blocked and U.S. persons are generally prohibited from dealing with them.'" Cortez v. Trans Union, LLC, 617 F.3d 688, 696 (3d Cir. 2010)

denies ever stating in any report or disclosure that Miller was a potential match to any person listed by OFAC as hostile to the United States.

Ronald Miller commenced this lawsuit as a putative class action by filing a complaint on August 28, 2012, under the Fair Credit Reporting Act (FCRA). (Doc. 1.) After detailing the legal background of both the FCRA and the OFAC list, Miller's putative class action complaint alleged that on October 13, 2011, the plaintiff obtained from Trans Union a copy of the credit history file which that reporting service maintained relating to him. According to Miller:

> Beneath the heading "End of Credit Report," the October 13, 2011 file stated as follows:
>
> > **-Begin Additional Information-**
> > **Additional Information**
> > The following disclosure of information is provided as a courtesy to you. This information is not part of your Trans Union credit report, but may be provided when Trans Union receives an inquiry about you from an authorized party. This additional information can include Special Messages, Possible OFAC Name Matches, Income Verification and Inquiry Analysis Information. Any of the previously listed information that pertains to you will be listed below.

(Doc. 1, ¶31.)

Miller's complaint then alleges that his Trans Union file contained the following additional recital:

The files states:

**Possible OFAC Match**

> The OFAC Database contains a list of individuals and entities that are prohibited by the U.S. Department of Treasury from doing business in or with the United States. Financial institutions are required to check customers' names against the OFAC Database, and if a potential name match is found, to verify whether their potential customer is the person on the OFAC Database. For this reason, some financial institutions may ask for your date of birth, or they may ask to see a copy of a government-issued form of identification, such as a Driver's License, Social Security card, passport or birth certificate. Some financial institutions will search names against this database themselves, or they may ask another company, such as Trans Union, to do so on their behalf. We want you to know that this information may be provided to such authorized parties. As a courtesy to you, we also want to make sure you are aware that the name that appears on your Trans Union credit file **is considered a *potential* match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") Database. The OFAC record that is considered a potential match to the name on your credit file is: [Intentionally Left Blank]** For more details regarding the OFAC Database, please visit: http://www.ustreas.gov/offices/enforcement/ofac/faq/index.shtml.

(Doc. 1, ¶34.)

Miller and Trans Union both concede that Miller is not on any OFAC list.

What they dispute is what the reasonable import of Trans Union's bureaucratic prose

cited above might be for third party readers. The parties also dispute whether the inclusion of this information in a credit file disclosure made to the plaintiff at his request violates any provisions of the FCRA.

On these issues, the competing views of the parties are starkly drawn. For his part, Miller alleges that he "is humiliated and embarrassed that defendant considers him a match or possible match to some suspected criminal on the OFAC list," is "distressed over the fact that defendant does not even provide sufficient information about" any potential match to the OFAC list, (Doc. 1, ¶43) and contends that Trans Union's conduct violates two separate provisions of the FCRA.

First, according to Miller, Trans Union has violated 15 U.S.C. §1681g, which provides that: "Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: **(1)** All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g (a)(1). According to Miller, the consumer file disclosure by Trans Union cited in his complaint does not contain a clear and accurate disclosure as mandated by law since this disclosure they may be construed as implying a connection to persons and entities on the OFAC list, without disclosing the nature of that alleged potential connection, in violation of §1681g(a). (Doc. 1, ¶¶54-55.)

Further, Miller asserted a cause of action under 15 U.S.C. §1681e(b), which relates to "consumer reports;" that is, a "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit." 15 U.S.C. § 1681a(d)(1). With respect to these reports, which are "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for ... credit," the FCRA imposes a duty upon reporting agencies that: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Despite the fact that Miller does not directly allege in his complaint that Trans Union ever disseminated a consumer report on him containing this OFAC information to any third party, the plaintiff insists that these defendants' treatment of the OFAC list information is misleading and inaccurate in that it implies a connection to persons and entitled cited by OFAC which does not exist, thus breaching its duty under §1681e(b)

to follow reasonable procedures to ensure maximum possible accuracy in consumer credit report information.

For its part, Trans Union contends, first, that the information conveyed to Miller at his request detailing Miller's credit file maintained by the defendant does not violate §1681g because it clearly and accurately discloses that there is no potential match between the plaintiff and persons on the OFAC list. Trans Union adheres to the view that the credit file clearly and accurately discloses to the consumer all information in the consumer's file, even though the way in which this information is conveyed is oblique, and requires the reader to conclude from the somewhat enigmatic file notation that "**The OFAC record that is considered a potential match to the name on your credit file is: [Intentionally Left Blank]**" that no match exists. Trans Union further insists that Miller may not maintain a separate claim under 15 U.S.C. § 1681e(b) in any event, since this provision of the FCRA relates solely to "consumer reports," and requires proof of dissemination of an inaccurate report to a third party in order to state a claim.

The defendant's motion to dismiss, (Doc. 20.), has been fully briefed by the parties, (Docs. 23, 24 and 26.), and is ripe for resolution. For the reasons set forth below, it is recommended that the motion be granted, in part, and denied, in part.

## II.     Discussion

### A.     Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks

omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. 1937; Twombly, 550 U.S. at 555–57, 127 S.Ct. 1955; Burch, 662 F.3d at 220–21." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012). As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document

integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. <u>Jordan v. Fox, Rothschild, O'Brien &Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B. <u>Elements of FCRA Claims</u>

When we undertake this assessment of whether Miller has plausibly stated the elements of various FCRA claims in his complaint, we begin by observing that in this field courts are cautioned to carefully examine the precise language of the statute, and are expressly warned to avoid using different statutory terms interchangeably. <u>See Fuges v. Sw. Fin. Servs., Ltd.</u>, 707 F.3d 241, 246 n. 7 (3d Cir. 2012). Thus, the elements of each of Miller's two claims must be carefully, and independently, assessed.

### 1. <u>The FCRA's Accuracy Requirements</u>

Here, Miller pursues claims under two separate provisions of the FCRA, 15 U.S.C. §§1681e and 1681g. While these two provisions relate to different types of reporting and have different elements of proof, both sections share a common theme. Each section of the FCRA imposes a duty on credit reporting services to take reasonable steps to ensure the accuracy of credit information they maintain and disseminate. Thus, §16781e(b), which relates to consumer reports that may disclosed

to third parties, states that: "Whenever a consumer reporting agency prepares a consumer report it shall follow *reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates*." 15 U.S.C. § 1681e(b)(emphasis added.). §1681g, in turn, which relates to consumer requests for access to their own credit files maintained by credit reporting services, imposes a similar accuracy requirement, stating that: "Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, *clearly and accurately* disclose to the consumer: **(1)** All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g (a)(1)(emphasis added).

The FCRA is a remedial consumer protection statute intended "to protect consumer from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010). FCRA does not, however, impose an absolute liability on credit reporting services, nor does it make these services guarantors of the perfect accuracy of the data they collect. Therefore, "liability does not flow automatically from the fact that a credit reporting agency, such as defendant, reports inaccurate information. Hauser v. Equifax, Inc., 602 F.2d 811, 814-15 (8th Cir.

1979); see <u>Austin v. Bankamerica Service Corp.,</u> 419 F.Supp. 730, 733 (N.D. Ga. 1974). Instead, liability flows from failure to follow '( (1) ) reasonable procedures ( (2) ) to assure maximum possible accuracy of the information ( (3) ) concerning the individual about whom the information relates.' " <u>Bryant v. TRW, Inc.,</u> 689 F.2d 72, 78 (6th Cir. 1982).

Credit history information does not meet the FCRA's accuracy benchmarks if it is negligently maintained in a materially incorrect fashion. <u>See Henson v. CSC Credit Servs.,</u> 29 F.3d 280, 283 (7th Cir. 1994). In particular, "§ 1681e(b) erects a standard of 'maximum possible accuracy.' That requires more than merely allowing for the possibility of accuracy." <u>Cortez v. Trans Union, LLC,</u> 617 F.3d 688, 709 (3d Cir. 2010). In assessing whether particular information represented in a report is "accurate," we are also enjoined to apply an objective standard. "An objective understanding of accuracy requires congruence between the legal status of a consumer's account and the status a [F]CRA reports. Put another way, a consumer report cannot be 'accura[te]' under either section 1681e(b) or section 1681i if it contains information that is legally incorrect." <u>Crane v. Trans Union, LLC,</u> 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003); <u>see Seamans v. Temple Univ.,</u> 901 F. Supp. 2d 584, 598 (E.D. Pa. 2012).

Moreover, consistent with the broad remedial goals of the Act, it has been held that information which may be technically accurate may still give rise to liability under the FCRA if that information is misleading, since § 1681e(b) imposes a standard of "maximum possible accuracy" on credit reporting services. Often, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic." Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010). Thus, "[t]hough 'technically accurate,' a derogatory entry on a credit report is actionable because it is misleading or materially incomplete. Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C.Cir.1984)." Agosta v. InoVision, Inc., CIV.A. 02-806, 2003 WL 23009357 (E.D. Pa. Dec. 16, 2003). See e.g., Evantash v. G.E. Capital Mortgage Servs., Inc., CIV.A. 02-CV-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003); Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 615 (E.D. Pa. 2008). As the court of appeals has observed:

> "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir.2001) (quoting Sepulvado v. CSC Credit Servs., 158 F.3d 890, 895 (5th Cir.1998)). Thus, a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 148 (4th Cir.2008).

Schweitzer v. Equifax Info. Solutions LLC, 441 F. App'x 896, 902 (3d Cir. 2011).

With few exceptions, questions concerning the misleading or inaccurate quality of a particular report involve a factual assessment which typically cannot be accomplished as a matter of law on the pleadings at the motion to dismiss stage of litigation. Thus, "the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.' Sarver v. Experian Info. Solutions, 390 F.3d 969, 971 (7th Cir.2004)." Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010). See also, Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C.Cir.1984); Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 615 (E.D. Pa. 2008); Agosta v. InoVision, Inc., CIV.A. 02-806, 2003 WL 23009357 (E.D. Pa. Dec. 16, 2003); Evantash v. G.E. Capital Mortgage Servs., Inc., CIV.A. 02-CV-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003).

## 2. Other Elements to FCRA Claims

Beyond this shared, overarching concern for the accuracy of credit information, FCRA claims under §1681g and §1681e, have different and distinct elements of proof. Since §1681g imposes a duty of accuracy on credit files shared with a consumer at the consumer's request by a credit reporting agency, the triggering events

in such cases are: (1) a consumer request; (2) a reporting agency response; and (3) and a failure to "clearly and accurately disclose to the consumer . . . All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g (a)(1).

In contrast, Miller's proof of a claim under "§ 1681e(b), consists of the following four elements: '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.' Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir.1996)." Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010). Because §1681e relates to consumer credit reports, documents designed to be disseminated to third parties, and a claim under §1681e requires proof of an injury caused by the inaccurate report, this injury requirement typically is satisfied by proof that the inaccurate report was provided to a third party. Indeed, some courts have suggested that release to a third party is an essential element of a claim under §1681e. Jackson v. Equifax Info. Servs., LLC, 167 F. App'x. 144, 146 (11th Cir. 2006); Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991) (finding that, if a consumer fails to satisfy the initial burden of presenting evidence showing that a consumer reporting agency prepared a report containing inaccurate information, "a court need not inquire further as to the

reasonableness of the procedures adopted"); <u>Davis v. Equifax Info. Servs.</u>, 346 F. Supp. 2d 1164, 1174 (N.D. Ala. 2004).

The difficulty with this categorical view, which is urged on us by the defendant, is that this position conflicts with both the plain language of the Act and case law construing that language, which plainly states that "Congress clearly intended the protections of the FCRA to apply to all information furnished *or that might be furnished* in a consumer report. <u>Gillespie v. Trans Union Corp.</u>, 482 F.3d 907, 909 (7th Cir.2007)." <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 711 (3d Cir. 2010)(emphasis added). <u>See also</u>, 15 U.S.C. § 1681a(d)(1)( defining "consumer reports" as a "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living *which is used or expected to be used* or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit.") (emphasis added). Thus, while we find that actual transmission of the report to a third party is not a legally required element of a §1681e claim, it is plain that well-pleaded allegations of an actual injury caused by an inaccurate consumer report are all essential elements of such a cause of action.

### C. Miller's Complaint, as Drafted, States a Plausible Claim Under §1681g But Fails to State a Claim Under §1681e

Applying these legal guideposts, we conclude that Miller's complaint, as drafted, states a colorable claim under §1681g, but presently fails to state a claim under §1681e.

Turning first, the question of the accuracy of the credit information provided by Trans Union from its files to Miller, we are mindful that courts have frequently found that the question of the accuracy of credit files to be a question of fact which is not amenable to resolution on a motion to dismiss. See e.g., Koropoulos v. Credit Bureau, Inc., 734 F.2d 37 (D.C.Cir.1984)(denying summary judgment); Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 615 (E.D. Pa. 2008); Agosta v. InoVision, Inc., CIV.A. 02-806, 2003 WL 23009357 (E.D. Pa. Dec. 16, 2003); Evantash v. G.E. Capital Mortgage Servs., Inc., CIV.A. 02-CV-1188, 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003). Further, we recognize, given the remedial consumer protection focus of the FCRA, that "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir.2001) Thus, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is

presented in such a way that it creates a misleading impression." <u>Schweitzer v. Equifax Info. Solutions LLC</u>, 441 F. App'x 896, 902 (3d Cir. 2011) (quoting <u>Saunders v. Branch Banking & Trust Co.</u>, 526 F.3d 142, 148 (4th Cir.2008).)

Viewing Miller's well-pleaded allegations through this analytical lens, we find that there are disputed issues of fact here relating to the potentially misleading quality of this file's description of Miller's OFAC list status which cannot be resolved as a matter of law solely on the pleadings at the outset of this litigation. While Trans Union freely acknowledges that Miller is not on the OFAC list, the recitals set forth in Miller's complaint reflect that the defendant's file disclosures to the plaintiff approached this straightforward question in an awkward, obscure and potentially confusing fashion. Rather than simply providing a declarative statement regarding the lack of any identifiable match between Miller and OFAC list persons and entities, Trans Union is alleged to have chosen to approach this issue in a cryptic and enigmatic fashion by reciting that: "As a courtesy to you, we also want to make sure you are aware that the name that appears on your Trans Union credit file **is considered a *potential* match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") Database. The OFAC record that is considered a potential match to the name on your credit file is: [Intentionally Left Blank].**" (Doc. 1, ¶34.)

This averment is ambiguous, and is capable of being construed in at least two very different fashions: first, as an assertion that no match exists or, alternatively, as a representation that a potential match exists but that Trans Union has elected to make an incomplete disclosure and leave the potential match intentionally blank in its disclosure to the consumer. The former interpretation would not be actionable. In contrast, the latter interpretation could give rise to liability under the FCRA. Since the disclosure may be susceptible of these two meanings, the file disclosure "may be deemed 'inaccurate' [since] the statement is presented in such a way that it [may] create[] a misleading impression." Schweitzer v. Equifax Info. Solutions LLC, 441 F. App'x 896, 902 (3d Cir. 2011). Therefore, Trans Union may not rely upon the claimed accuracy of its disclosure to wholly defeat Miller's claims in this FCRA action on the pleadings. Rather, this fact-bound question may only be addressed on another day, in another proceeding, or through a properly documented summary judgment motion.

Yet while Trans Union may not secure dismissal of all claims with prejudice based upon the alleged accuracy of its files, we find, at present, that Miller's complaint does not adequately state a claim under §1681e for several reasons. First, as presently drafted, the complaint fails to sufficiently take into account the fact that §1681e applies only to "consumer reports," which are defined as a "written, oral, or

other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit." 15 U.S.C. § 1681a(d)(1). Instead, the well-pleaded facts recited by Miller simply relate to a disclosure to the plaintiff of his credit files by Trans Union, something separate and distinct from the release of a consumer report to third parties. Thus, the complaint in its current form seems to conflate two different types of consumer credit reports and files, something that the courts expressly caution us to refrain from doing. See Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 246 n. 7 (3d Cir. 2012).

Because the complaint seems to conflate and confuse these two types of reports and disclosures, we further find that Miller has not adequately pleaded the elements of a §1681e cause of action; namely, that " '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.' Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir.1996)." Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010). In particular, without

the inclusion of some further well-pleaded facts, we cannot discern on the basis of Millers' recitals relating to his credit file entries whether he has also plausibly stated a claim that Trans Union placed inaccurate information in the plaintiff's consumer report; whether those inaccuracies were due to the failure to follow reasonable procedures; whether Miller was injured by the inaccurate consumer report; or whether the injury was caused by the alleged inaccuracy. In short, without further clarity and precision in pleading these elements of a §1681e claim, Miller's complaint, at most, " pleads facts 'merely consistent with' a defendant's liability, [and] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

While we find that the complaint is flawed with respect to this particular claim, we also recognize that the defects cited in this Report and Recommendation may be subject to correction through amendment of pleadings. Therefore, as to the plaintiff's §1681e cause of action, it is recommended that this count of the complaint be dismissed without prejudice to the plaintiff endeavoring to file an amended complaint correcting the deficiencies cited in this Report, provided that the plaintiff acts within 20 days of any dismissal order.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's motion to dismiss, (Doc. 20.), be GRANTED, in part, and DENIED, in part, in that the motion will be denied with respect to Miller's claims under §1681g of the FCRA, but will be GRANTED with respect to Miller's §1681e claim, provided that the dismissal is without prejudice to the plaintiff endeavoring to file an amended complaint correcting the deficiencies cited in this Report within 20 days of any dismissal order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 14th day of August 2013.

*__S/Martin C. Carlson__*
Martin C. Carlson
United States Magistrate Judge