**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RONALD MILLER, on behalf of** | : | **CIVIL NO. 3:12-CV-1715** |
| **himself and all others similarly** | : | |
| **situated** | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **TRANS UNION, LLC.,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION AND ORDER**

**I.    Procedural History and Statement of Facts**

Ronald Miller commenced this lawsuit as a putative class action by filing a

complaint on August 28, 2012, under the Fair Credit Reporting Act (FCRA).  (Doc.

1.)  After detailing the legal background of both the FCRA and the OFAC list, a list

maintained by the United States Treasury Department's Office of Foreign Assets

Control, ("OFAC"), of entities and individuals identified as hostile to the United

States[1], Miller's putative class action complaint alleged that on October 13, 2011, the

_____

[1]As the United States Court of Appeals for the Third Circuit has previously
explained:  "OFAC administers and enforces economic and trade sanctions based
on U.S. foreign policy and national security goals against threats to the national
security, foreign policy, or economy of the United States.  Those sanctions are
aimed at specific regimes, individuals thought to be terrorists, international

plaintiff obtained from Trans Union a copy of the credit history file which that reporting service maintained relating to him.  According to Miller:

> **-Begin Additional Information-**
> **Additional Information**
> The following disclosure of information is provided as a courtesy to you.  This information is not part of your Trans Union credit report, but may be provided when Trans Union receives an inquiry about you from an authorized party.  This additional information can include Special Messages, Possible OFAC Name Matches, Income Verification and Inquiry Analysis Information.  Any of the previously listed information that pertains to you will be listed below.

(Doc. 1, ¶31.)

---

narcotics traffickers, as well as persons involved in activities related to the proliferation of 'weapons of mass destruction.'
http://www.treas.gov/offices/enforcement/ofac/ (visited on June 17, 2010). . . . .
'[a]s part of its enforcement efforts, OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries.  It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific.  Collectively, such individuals and companies are called "Specially Designated Nationals" or "SDNs."  Their assets are blocked and U.S. persons are generally prohibited from dealing with them.'"  Cortez v. Trans Union, LLC, 617 F.3d 688, 696 (3d Cir. 2010)

Miller's complaint then alleges that his Trans Union file contained the following additional recital:

The files states:

**Possible OFAC Match**

> The OFAC Database contains a list of individuals and entities that are prohibited by the U.S. Department of Treasury from doing business in or with the United States. Financial institutions are required to check customers' names against the OFAC Database, and if a potential name match is found, to verify whether their potential customer is the person on the OFAC Database. For this reason, some financial institutions may ask for your date of birth, or they may ask to see a copy of a government-issued form of identification, such as a Driver's License, Social Security card, passport or birth certificate. Some financial institutions will search names against this database themselves, or they may ask another company, such as Trans Union, to do so on their behalf. We want you to know that this information may be provided to such authorized parties. As a courtesy to you, we also want to make sure you are aware that the name that appears on your Trans Union credit file **is considered a *potential* match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") Database. The OFAC record that is considered a potential match to the name on your credit file is:**

> **[ Left Blank]**

> For more details regarding the OFAC Database, please visit http://www.ustreas.gov/offices/enforcement/ofac/faq/index.shtml.

(Doc. 1, ¶34.)

Construing this declaration as implying that Miller has some connection to persons on the OFAC, Miller has sued Trans Union, alleging, in part, that Trans Union failed to "clearly and accurately disclose to the consumer . . . All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g (a)(1).  In the course of this litigation we have previously denied Trans Union's motion to dismiss this action entirely, holding that Miller's complaint states a plausible claim under §1681g of the FCRA which  imposes a duty of accuracy on credit files shared with a consumer at the consumer's request by a credit reporting agency.  The elements of an FCRA claim under §1681g, which we found were sufficiently pleaded in this complaint, are:  (1) a consumer request; (2) a  reporting agency response; and (3) and a failure to "clearly and accurately disclose to the consumer . . . All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g (a)(1).  (Docs. 50, 56, and 57.)

The parties are now litigating a motion for class certification relating to the FCRA claim.  (Doc. 79.)  As part of this process we previously set a schedule for class certification discovery and the filing of a motion for class certification.  (Doc. 68.)  Notably, our prior case management order did not expressly call for the early disclosure of expert reports relating to class certification, and when the parties jointly

4

requested extensions of this class certification discovery deadline to November 2014,

neither party requested that a deadline for expert report disclosures also be set as part

of this scheduling order.  (Docs. 71-74.)

The plaintiff has now filed a motion for class certification, (Doc. 79.), which

Trans Union has opposed.  (Docs. 83-85. )  In connection with its opposition to this

class certification motion, on January 26, 2015, Trans Union has filed a declaration

of Victor Stango, an associate professor of management at the University of

California, Davis, who proffers himself to the court as an expert on consumer

behavior in financial service markets.  (Doc. 85.)  The plaintiff has moved to exclude

consideration Dr. Stango's declaration, (Doc. 91.), arguing that Trans Union's alleged

failure to disclose Dr. Stango's report in November 2014 when the general class

certification discovery deadline passed warrants the sanction of preclusion of this

information and evidence during these class certification proceedings.  This motion

has been fully briefed by the parties, (Docs. 91, 92, and 93.), and at the request of the

parties oral argument was held on this motion on April 17, 2015.[2]  (Doc. 96.)

---

[2]This oral argument was illuminating in terms of the relief sought by Miller.  For
its part, Trans Union offered to make Dr. Stango available for deposition, and to
consent to other discovery, in an effort to mitigate any potential prejudice to the
plaintiff relating to the timing of the disclosure of Dr. Stango's declaration.  The
plaintiff declined this alternate relief, indicated that the plaintiff solely sought the
exclusion of Dr. Stango's declaration and stated that the plaintiff did not desire

Accordingly, this motion is now ripe for resolution.

For the reasons set forth below, the motion will be denied.

## II.   **Discussion**

Rulings regarding the proper scope of discovery, and discovery sanctions, are matters consigned to the court's discretion and judgment.  Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court."  DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Thus, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).  This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes.  See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997).  When a magistrate judge's decision involves a discretionary [discovery]  matter . . . , "courts in this district have

---

any other lesser form of discovery relief.

determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F.Supp. 501, 502 (E.D.Pa.1996)).   Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles.  Where, as here, we are asked to wholly exclude evidence as a sanction for an alleged failure to make timely discovery disclosures we begin our analysis with the proposition that: "'[T]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.' <u>Meyers</u>, 559 F.2d at 904." <u>Quinn v. Consol. Freightways Corp. of Delaware</u>, 283 F.3d 572, 576 (3d Cir. 2002).  <u>See</u> <u>ZF Meritor, LLC v. Eaton Corp.</u>, 696 F.3d 254, 297 (3d Cir. 2012)( *held,* exclusion of critical evidence is an "extreme" sanction, reversing order excluding evidence).

Recognizing the extreme nature of this sanction, and the fact that exclusion of evidence is typically reserved for cases marked by a flagrant disregard of a clear direction, it has also been held that:  "In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors:  (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.  See Konstantopoulos, 112 F.3d at 719."  Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000).  In addition some courts look to a fifth factor in making this discretionary determination, also considering "the importance of the excluded evidence."  ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012).

Applying these benchmarks we find that the extreme sanction of exclusion of Dr. Stango's declaration is not warranted here.  At the outset, we note that it has not been clearly shown that a culpable failure of discovery has occurred in this instance. The case management order governing class certification discovery did not prescribe a specific deadline for disclosure of expert reports, and despite joint requests for extension of this class certification discovery deadline, neither party requested that

8

we impose an expert report deadline on this aspect of the discovery process. Therefore, while we would commend discovery transparency to all parties, we cannot say that there has been a culpable breach of a court order with respect to the timing of the disclosure of Dr. Stango's report.  Further, we note that many courts have permitted the disclosure of expert witness reports during briefing of class certification issues, and have not sanctioned the failure to provide these reports beforehand.  See, e.g., Ewert v. eBay, Inc., No. C-07-02198 RMW, 2010 WL 4269259, at* 13 (N.D. Cal. Oct. 25, 2010) (stating that defendant was not required to disclose in advance the "expert witness reports for use in class certification briefing"); Oplchenski v. Parfums Givenchv, Inc., 254 F.R.D. 489, 497, n.6 (N.D. 111. 2008); Young v. Nationwide Life Ins. Co., 183 F.R.D. 502, 506 (S.D. Tex. 1998) (denying motion to strike expert report relied upon by defendant in opposing class certification, which was disclosed for the first time with opposition brief and after the deadline for completion of "discovery on the issue of class certification").  Thus, the refusal to impose the severe sanction of exclusion of an expert report is a practice that other courts have adopted in similar circumstances.  Likewise, the provisions of Rule 26(a), dealing with expert witness disclosures generally, would not automatically apply in this setting since Rule 26(a)(2) contemplates deadlines for disclosure of expert witnesses at trial, and Rule 26(a)(2)(D) calls for the disclosure of experts at least 90 days prior to trial.  Here, no

trial date has been set, and the rule, therefore, has not been clearly violated in a way which would merit exclusion of evidence.

Given the ambiguity in our discovery order, and the lack of clear legal authority imposing any further discovery obligations upon Trans Union we conclude that Miller has not made a showing of bad faith "willful deception or 'flagrant disregard' of a court order by the proponent of the evidence,' "Quinn v. Consol. Freightways Corp. of Delaware, 283 F.3d 572, 576 (3d Cir. 2002), that would warrant the sanction of exclusion of this evidence.  We further find that when assess the three remaining factors that guide our exercise of discretion– (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; and (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000)– those factors do not call for the extreme sanction of exclusion of this evidence.  At the outset, while we recognize that the January 2015 disclosure of Dr. Stango's report may have caused some prejudice to the plaintiff, there are an array of other remedies that would be available to the plaintiff to mitigate this prejudice.  These alternate remedies include allowing additional discovery of Dr. Stango, permitting the plaintiff further time to submit countervailing affidavits, and authorizing other discovery by

10

the plaintiff.  Trans Union has offered to cooperate in these lesser measures, but these offers have been declined by the plaintiff.  Therefore, when we balance the prejudice or surprise to the party against whom the excluded evidence be admitted against the ability of that party to cure that prejudice, we find that this balance favors lesser remedies for any prejudice resulting from the timing of the disclosure of Dr. Stango's report, and does not support the sanction of exclusion of this evidence.

We also conclude that allowing consideration of this evidence on class certification would not disrupt the orderly and efficient resolution of the case, yet another factor which weighs against exclusion of this report.  In this regard, we note that Dr. Stango's report and conclusions have been available to all parties since January 2015.  Thus, some four months have elapsed since this disclosure was made.  Further, we have scheduled oral argument on the class certification motion for May 8, 2015, thus ensuring that the disclosure of this specific report in January 2015 does not work a sudden and unfair prejudice upon the plaintiff in this case.  In short, having been aware of the Stango report now since January 2015, we are confident that the plaintiff is now fully prepared to meet the conclusions set forth in that report.  Of course, if the plaintiff concludes that he is not fully prepared to address that report on class certification, he may seek relief in the form of an order allowing additional time for discovery, or some other lesser remedy, and we are prepared to consider such a

11

request.  However, in this setting, where the plaintiff has eschewed other relief in favor of exclusion of Dr. Stango's declaration, we do not believe that a balancing of the equities favors granting this extreme form of relief.[3]

Finding that a weighing of the discretionary factors which govern the exclusion of evidence as a sanction for an alleged discovery violation do not favor exclusion of Dr. Stango's declaration, for the foregoing reasons, the motion to exclude will be denied.

An appropriate order follows.

**III.   Order**

The Motion to Exclude the Declaration of Victor Stango (Doc. 91.) is DENIED.

---

[3]We further note that, during oral argument on the motion to exclude plaintiff's counsel attacked the probative value and weight which should be given to this report in any event. Because we find that the other four factors which guide our discretion in the field of exclusion of evidence do not favor the exclusion of this report, we will take the plaintiff's observation regarding this declaration under advisement, but we reach no conclusion regarding the fifth factor considered by the courts when considering motions to exclude evidence, "the importance of the excluded evidence."  ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012).

So ordered this 6th day of May 2015.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge